## SAWYER SPINDLE CO. v. W. G. & A. R. MORRISON CO.

### (Circuit Court, D. Connecticut. September 18, 1893.)

### No. 735.

1. PATENTS FOR INVENTIONS—ANTICIPATION—SPINDLE BEARINGS.

The invention described in letters patent No. 253,572, issued February 14, 1882, to John E. Atwood, which cover, in substance, a live spinning spindle, supported within a supporting tube containing step and bolster bearings for the spindle, which tube is flexibly mounted with relation to the rail of the spinning machine, was not anticipated by the Rabbeth spindle, which is described in letters patent No. 227,129. Sawyer Spindle Co. v. Morrison Co., 52 Fed. Rep. 590, reaffirmed.

2. SAME—INVENTION.

The Atwood spindle was not deprived of patentable invention by anything shown in the Rabbeth device, or by the pre-existing "hydro-extractors" or centrifugal machines, an example of which is shown in patent No. 82,049, issued September 8, 1868, to D. M. Weston, wherein the shaft revolves in a box at its base, having an easily yielding spring of rubber or other elastic material around its outer circumference, and within a stationary bushing, which is firmly secured to the cross timbers below.

3. SAME—INFRINGEMENT.

The second and third claims of the Atwood patent are infringed by a spindle in which the spring surrounding the supporting tube, which contains both step and bolster bearings, is interposed between a shoulder on the tube and a shoulder on the base piece, so as to press the former on the latter, the latter being a separate nut which screws into the upper end of the base piece; for this is a mere change in the location of the nut which operates the spiral spring in the patented device.

4. SAME.

The patent is also infringed by a spindle which has its supporting tube divided transversely into two parts, the lower part resting upon the bottom of the oil cup, and acting as the step bearing of the spindle, with the spring surrounding the part of the tube that contains the bolster bearing; it appearing that the two parts move together laterally in all directions during the self-adjustment of the spindle, substantially as if the supporting tube consisted of a single piece.

In Equity. Suit by the Sawyer Spindle Company against the W. G. & A. R. Morrison Company for infringement of a patent. A motion for a preliminary injunction was heretofore granted in part. 54 Fed. Rep. 693. The case is now on final hearing. Decree for complainant.

Frederick P. Fish and W. K. Richardson, for complainant.
Wm. E. Simonds and Charles L. Burdett, for defendant.

SHIPMAN, Circuit Judge. Letters patent to John E. Atwood, No. 253,572, dated February 14, 1882, for an improved support for spindles in spinning machines, were the subject in a bill in equity in this court between the parties in this case, and were adjudicated upon in a decision which was filed September 26, 1892, (52 Fed. Rep. 590,) and in which the second, third, and fifth claims of the patent were held to be valid, and to have been infringed upon by the defendant's spindle, known in the case as the "Morrison Spindle." Subsequently the present bill was brought to prevent the manufacture and sale by the defendant of the spindles known as the "Hammond and Dady Spindles," and which were a modification of the device the manufacture of which had been enjoined. Upon a motion for preliminary injunction, the use of the Hammond spindle only was enjoined. 54 Fed. Rep. 693. The opinions which have been already written in this litigation state the history and the distinctive features of the invention, and contain the conclusions of the court in regard to the patentable character and scope and the proper construction of the claims of the patent.

The characteristic feature of the Atwood invention was truly said in the specification of the patent to be "a supporting tube, which is flexibly mounted with relation to the spindle rail, and contains the step and bolster bearings for the spindle, so that the latter and said tube may move together laterally in all directions during the self-adjustment of the spindle while carrying an unequally balanced bobbin and its yarn, instead of relying upon the movement of the spindle and its bearings within and independently of the supporting tube, as heretofore in this class of spindles." In the prior suit, the Rabbeth spindle support, which was patented by letters patent No. 227,129, and which was admitted to have priority over the Atwood invention, was relied upon as an anticipation of the Atwood patent. The Rabbeth structure was described in the opinion as follows: It "had a supporting tube rigidly connected with the rail; a bolster bearing, which was a thin tube, affording a lateral bearing surface for the spindle; a yielding cushion between the bolster bearing and the supporting tube, and a step bearing within the supporting tube. This tube may constitute the step bearing, but the step bearing and the bolster bearing are separate pieces, and consequently the spindle and the bolster bearing can vibrate in all directions." The important features of the patented device were said in the same

opinion to be "the supporting tube, within which are formed both the step bearing and the bolster bearing, and flexibly mounted upon or in relation to the supporting rail, the tube moving out of position under the influence of the vibration of the spindle; together with the manner in which the tube is secured to the rail, so that graduated pressure can be given, and strength can be secured." It was further said that the flexible support of the Atwood tube below the rail is far more than a change of the position of the Rabbeth cushion from the inside of his tube, and that the result was to cushion, but the method by which the cushioning is produced is very different. It is insisted in the argument of the present case that the foregoing description of the Rabbeth device is not universally true, but that the patent also describes a method of construction in which both step bearing and bolster bearing are parts of the same thin tube, which the patent designates as a vertical bearing. Two of the three claims of the Rabbeth patent call for a bolster bearing which is capable of yielding laterally with equal freedom in all directions, and a step within this supporting tube, which permits the foot to move in the same manner. These requirements are not expressed in the third claim, but the whole drift of the specification is that the bolster and the foot of the spindle each has equal freedom of motion in every direction, and that the foot of the spindle is not confined laterally, but is in an unsocketed or loosely fitting bearing. For example, it is said:

"In operation it will be seen that the entire bearing, f, [the vertical bearing,] being capable of more or less lateral movement in all directions, and the foot of the spindle being also equally free to move in any direction, the spindle can readily assume any position which an unevenly balanced bobbin would cause it to assume."

The position of the defendant is based upon the clause of the specification, which says, in substance, that when the bottom of the supporting tube is fitted for a plain step bearing the vertical bearing is open at its bottom, and when it is desired that the bottom of the spindle be elevated above the bottom of the supporting tube the vertical bearing is mounted upon a base tube, which rests upon the bottom of the supporting tube, and the step bearing is provided for either by means of a head inserted in the bottom of the vertical bearing or in the top of the base tube. The defendant naturally supposes that "inserted" means fixed in the bottom of the bearing. I think that this is true, and that the thin tube can in one proposed method of construction contain both bearings, and to that extent the previous description of the Rabbeth device requires modification.

This fact does not change the patentable relation of the two devices to each other. It is admitted by the learned expert for the defendant that he does not find in any structure before Atwood's a live spinning spindle supported within a supporting tube, containing step and bolster bearings for the spindle, which tube is flexibly mounted with relation to the rail of the spinning ma-

chine. The flexible attachment, with relation to the rail, of this supporting tube, is the gist of the Atwood device, and was its substantial improvement upon the rigidly held supporting tube of the Rabbeth spindle, and its cushion interposed between the supporting tube and the thin tube which constituted the bolster bearing.

The next question is whether the Atwood combination possesses patentable character in view of the Rabbeth spindle support, and the hydro-extractors or centrifugal machines described in the D. M. Weston patent, No. 82,049, of September 8, 1868, and the W. H. Tolhurst patent, No. 199,125, of January 8, 1878, and in the Weston English patent of 1874. The theory of the defendants is that, a cushion being old, the particular cushioning device of the Atwood spindle support was anticipated by the centrifugal machines, or so plainly suggested by them as to deprive Atwood of the character of an inventor. The heavy machine of the Weston patent of 1868, which in its main features is like all the "centrifugal machines," is thus briefly described in the decision upon the motion for a preliminary injunction: It "consisted of a revolving cylinder, which was to contain wet sugar, or some other semiliquid material, to be freed from water, and which was firmly attached to the top of a perpendicular shaft, which shaft revolved in a box at its base. To this shaft power was applied by means of a driving belt attached to a pulley. A flexible, easily yielding spring, made of rubber or other elastic material, was placed around the outer circumference of the box, and within a stationary bushing, which was firmly secured to the cross timbers below. The improvement described in the patent consisted in mounting the machine so as to have a flexible pivot bearing at the base, rather than to suspend it upon bearings at the top of the upright shaft." Upon this hearing the defendant has placed great stress upon this class of machines, and has insisted that by them Atwood was told how to make a flexible attachment of his supporting tube to the rail, and that his invention was a double use of an old flexible support. The supposed analogies between these two classes of machines seem to me fanciful. "The needs of the respective machines are different, and call for a different character and location of pivot bearings; and therefore the box at the bottom of the shaft of the Weston machine has no patentable relation to the tube around the Atwood spindle, which supports both steps and bolster bearings." The centrifugal machines, with their lurching movement, neither need nor possess bolster bearings or supporting tubes in any proper sense in which those terms are used with reference to spinning spindles. But, if they are not an anticipation, the defendant thinks that they prevented the exercise of invention by Atwood, whose work was simply to mechanically adapt the pivot of the shaft of a hydro-extractor to a spindle for spinning silk. If they gave a suggestion of being capable of such adaptation, the history in the record shows that the work was that of an inventor.

Upon the question of infringement, the effort upon the part of the defendant being to confine the Atwood invention to narrow limits, the contention is that its patentability is substantially limited to a spring so placed that it surrounds the lower end of the supporting tube, is below the rail, and is accessible without disturbing the spindle. It is therefore insisted that the spring of the Hammond spindle, which is interposed between a shoulder on the tube and a shoulder on the base piece, this last-named shoulder being a separate nut which screws into the upper end of the base piece, is not an infringement. The patentable character of the Atwood invention does not depend upon the precise position with respect to the rail of the flexible attachment, and for the reasons stated in the opinion upon the motion the Hammond spindle is an infringement of the second and third claims of the patent.

The Dady spindle presents a question which did not exist in the prior suit. The construction of the tube, and the doubts which were caused thereby, were stated as follows in the opinion upon the motion:

"The Dady spindle differs from the Hammond spindle because its supporting tube is transversely divided into two parts. The lower part, which is about 13-16ths of an inch in height, and which rests upon the bottom of the oil cup, receives the step of the spindle, and is its step bearing. The spring surrounds that part of the tube which contains the bolster bearing. The difference is that one supporting tube or piece of metal does not contain both bearings, but the complainants earnestly contend that the spindle and the two parts of the tube have the same working relation to each other as if the tube was made in one piece, and that the several parts are so held in fact as to operate as if they were firmly united together. I have no doubt that the Dady spindle is not the Rabbeth spindle, in which the supporting tube was rigidly connected with the rail, and could not adapt itself to the movements of the spindle, and the spindle and bolster bearing moved 'within and independently of the supporting tube.' Neither part of the supporting tube of the Dady spindle is rigidly connected with the rail, and each part moves to a certain extent with the spindle during its vibrations. My doubt is whether the two parts of the tube and the spindle 'move together laterally in all directions during the self-adjustment of the spindle,' as required by the letters patent; in other words, whether the two parts move in line with each other, so that there is no independent movement of the step bearing. I do not now clearly see why the socket which forms the step bearing, and rests upon the bottom of the oil cup, may not move laterally, and, to a certain extent, independently of that part of the tube which contains the bolster bearing."

The effect which resulted from the fact that the two bearings were in a tube made of one piece of metal was frequently pointed out in the opinion in the prior suit, and the use of this language in regard to the tube led the defendant into the belief that such a method of construction was vital. It is vital if it was demanded in the claims of the patent, or if the transverse severance creates a substantial change in the mode of operation of the supporting tube. In the second claim the bearings are called a "combined bolster and step," and the tube is called, in the third claim, a "supporting tube." The claims do not require that the tube shall be one piece of metal, but it must act as one tube; and if the severed

parts are so bound together by the spindle which rests in the socketed step bearing that they act as one tube, the requirements of the claims would seem to be complied with. The testimony on the part of the complainant was to the effect that the two pieces of the Dady tube were so combined, by means of the spindle, that both the upper lateral bearing and the lower bearing of the spindle move with it in the same manner, substantially, as in the Hammond spindle, and that the parts move together laterally in all directions during the self-adjustment of the spindle. It cannot be said that there is an absolute unity of motion in the two bearings, because from the fact of severance absolute unity will not probably exist; but the complainant's testimony is to the effect that there is no substantial independent movement of the step bearing. This testimony was not denied or controverted by the defendant company, which showed no disposition to neglect any attackable point in the complainant's case. I therefore conclude that it could not be successfully attacked, and that the doubt which I expressed was not well founded.

Let there be a decree for the complainant for an injunction against the infringement of the second and third claims, and for an accounting.