SAWYER SPINDLE CO. et al. v. TAYLOR et al.

(Circuit Court, D. New Jersey. October 7, 1895.)

1. PATENTS—INJUNCTION ON FINAL HEARING—LACHES.

Upon final hearing, laches, in the sense of mere delay in bringing suit against defendants, unaccompanied by any acts amounting to an estoppel, cannot deprive plaintiffs of their right to an injunction. Kittle v. Hall, 29 Fed. 508, and Waite v. Chair Co., 45 Fed. 258, distinguished.

2. SAME—DECISIONS IN OTHER CIRCUITS.

Where a patent has been several times sustained by the circuit courts in other circuits, the court should not enter upon an independent consideration of the subject, but should follow those decisions, unless satisfied that additional evidence has been submitted to it, which, if adduced in the former suits, would probably have led to different results. Wanamaker v. Manufacturing Co., 3 C. C. A. 675, 53 Fed. 791, followed.

3. SAME—SPINNING MACHINES.

The Atwood patent, No. 253,572, for a support for spindles for spinning machines, *held* valid and infringed as to claims 3, 4, and 5.

This was a suit in equity by the Sawyer Spindle Company and others against Taylor and others for infringement of a patent relating to spinning machines.

Fish, Richardson & Storrow, for complainants.
A. Q. Keasbey & Sons, for defendants.

DALLAS, Circuit Judge. This suit is upon patent to John E. Atwood, No. 253,572, dated February 14, 1882, for "support for spindles for spinning machines." The claims involved are as follows:

"(3) The combination, substantially as hereinbefore described, of a spindle rail of a spinning machine, a spindle, and a supporting tube flexibly mounted with relation to the spindle rail, and containing step and bolster bearings. (4) The combination, substantially as hereinbefore described, of a spindle rail, a spindle, a supporting tube containing step and bolster bearings, flexible connections between said tube and the spindle rail, and adjusting devices for varying the degree of flexibility of the supporting tube and spindle therein. (5) The combination of the spindle rail, the spindle, the supporting tube, loosely mounted with relation to the rail, and containing the step and bolster bearings for the spindle, the spring, and the nut for compressing it, substantially as described."

The defendants insist that the complainants are chargeable with laches, and that, therefore, "an injunction ought not to be granted, even on final hearing,—at least, until the coming in of the master's report." When the case was before the court on motion for preliminary injunction (56 Fed. 110), the same point was made, but I then, upon full consideration, reached a conclusion adverse to the defendants. The decision upon that motion was made on June 6, 1893, and thus, without further application or appeal, the matter has rested, until now, upon hearing on pleadings and proofs, the court is asked to refrain from granting a perpetual injunction pending any reference that may be ordered. But if the opinion which I formed on the motion for an interlocutory injunction was then rightly con-

trolling, it certainly should be no less potential now that the proofs have been taken, and the plaintiffs insist that by them the main questions in the cause have been settled and resolved in their favor.    In fact, however, the defendants' present position is not as strong in this regard as it was on the interlocutory hearing.    I do not feel called upon to vindicate the action of the court in granting the preliminary injunction, but may abridge discussion by saying that, if the delay then set up to defeat the motion had not been satisfactorily explained, that motion might have been, upon that ground, refused; but, upon final hearing, laches, in the sense of mere delay in bringing suit against the defendants, cannot deprive the plaintiffs of their right to protection against a continuance of the unlawful use of their patented invention, and consequent injury to their business.    It is only by words, acts, or omissions which give rise to estoppel that this right, if and when established by the proofs, can be forfeited.    This distinction is clear and well recognized, and cannot be obliterated by a vague use of the word "laches."    As I have said, mere delay in bringing suit may, under some circumstances, impel the court to withhold its hand during the course of litigation; and as was remarked in New York Grape-Sugar Co. v. Buffalo Grape-Sugar Co., infra, even on final hearing, "cases may arise where a court of equity would refuse an injunction against an innocent infringer, by reason of the protracted course of conduct of a previous owner of the patent, who knew of the infringement, and silently and knowingly permitted the expenditure of substantial sums of money by the infringer."    To such cases the doctrine of estoppel may be pertinent, but the present case is not such an one.    I have attentively read the very thorough brief of the learned counsel of the defendants, but without finding any fact referred to other than that, as claimed, the plaintiffs long knew of the violation of their rights before proceeding to maintain them; and I am constrained to the conclusion that his contention is met by the rule, as I have already indicated it, that mere delay in seeking relief will not, where there is no estoppel, prevent the granting of a final injunction.    New York Grape-Sugar Co. v. Buffalo Grape-Sugar Co., 18 Fed. 638; Brush Electric Co. v. Electric Imp. Co., 45 Fed. 241; Price v. Steel Co., 46 Fed. 107; McLean v. Fleming, 96 U. S. 245–253. In Waite v. Chair Co., 45 Fed. 258, it would seem, if the syllabus in the report could be relied on, that the question was considered as arising upon a motion for a preliminary injunction; but, apart from this, the learned judge certainly does appear to have held that long-continued knowledge of infringement, without objection, might, in the discretion of the court, be accepted as a reason for postponing "the question of granting an injunction  *  *  *  until the coming in of the master's report."    This was held, however, wholly upon the supposed authority of Kittle v. Hall, 29 Fed. 508; but in that case Judge Coxe, after saying that the proposition, as presented to him, was a most perplexing one, proceeded to consider it upon the peculiar facts before him, and which, in his opinion, were of such character that, as he said, "the public had a right to assume, from this pro-

found silence and supineness, that the patentee and his successors had relinquished any claim which they might possess." In other words, there was in that case not merely delay, but silence and supineness, under circumstances which called for protest and activity, and which therefore worked an estoppel, and warranted the assumption of an abandonment. In this lies the distinction between that case and the one now under consideration; for, as I said upon the motion for a preliminary injunction, "there is nothing in this case to show a waiver by the complainants of the right which they now assert, or which should preclude them from the allowance of the special equitable remedy which they invoke. They proceeded against these defendants with what, under the circumstances, was due diligence, and have done nothing to justify the imputation that supineness or apparent acquiescence upon their part induced or invited the infringement of which they now complain."

Infringement is not denied, except upon the theory that, "if the patent in suit is sustained at all, it must be confined to the precise form described and shown in the specifications and drawings." I am unable to adopt this theory. It is, in my opinion, not well founded, and it conflicts with the adjudications upon this patent to which I am about to refer. That the difference between the patented combination and that used by the defendants is formal, merely, and not substantial, is plainly obvious, and, indeed, seems to be admitted. I accordingly hold that infringement has been established.

The defense more strenuously urged is stated in the defendants' brief under three heads. It is that the claims in controversy are invalid (1) for lack of invention, as distinguished from mechanical skill; (2) for lack of novelty; and (3) because they are inoperative. But, except to the extent hereafter to be mentioned, the question of validity cannot now be regarded as an open one. This patent has been several times energetically attacked, and, upon full consideration, has uniformly been sustained. Sawyer Spindle Co. v. W. G. & A. R. Morrison Co., 52 Fed. 590, 54 Fed. 693, and 57 Fed. 653; Same v. Turner, 55 Fed. 979. In the absence of any adjudication of the matter by a court of review, a court of first instance should not, I think, enter upon an independent consideration of this subject, but should follow the decisions to which I have referred, unless satisfied that additional evidence has been submitted to it, which, if it had been adduced in the former suits, would probably have there led to a different result. In disposing, upon final hearing, of the case of Manufacturing Co. v. Deisler, 46 Fed. 854, Judge Butler, with the concurrence of Judge Acheson, acted upon the rule to which I have alluded, and this action was subsequently approved by the court of appeals for this circuit. Wanamaker v. Manufacturing Co., 3 C. C. A. 675, 53 Fed. 791. See, also, Office Specialty Manuf'g Co. v. Winternight & Cornyn Manuf'g Co., 67 Fed. 928. The only evidence now presented which was not before Judge Shipman when he last considered and sustained this patent is the Phillipp Cramer patent, No. 144,319, of November 4, 1873, and the testimony relating thereto; and I am con-

vinced that, if this evidence had been submitted to that learned judge, it neither would nor should have led him to a conclusion different from that which was in fact reached by him. The Cramer patent, which is for "improvement in centrifugal machines for drawing sugar," relates to that class of machines whose supposed analogy to the machine here in question Judge Shipman has characterized as "fanciful." Whether Cramer disclosed a practical and operative mechanism for any purpose is, at most, extremely doubtful, and that he did not disclose anything adapted to a spinning spindle is quite evident. To repeat, substantially, what was said by Judge Shipman with regard to other similar patents, if Cramer's patent gave a suggestion of being capable of such adaptation, yet the history in the record shows that the work of Atwood was that of an inventor. The defendants have produced a model designed to show that the invention of Atwood might be constructed under the Cramer patent, but this model proves too much. If it be conceded that it shows that, in the light supplied by Atwood, ingenuity may now evolve his construction from that of Cramer, yet the fact remains that it also shows that to do this the Cramer mechanism must be materially modified, and a very decided departure be made from anything which was in Cramer's mind. There is nothing in his patent which would have suggested to a mechanic of ordinary intelligence, who was not examining it for that purpose, the Atwood "improvement in the supports for spinning machines"; and "it is not sufficient, to constitute an anticipation, that the device relied upon might, by modification, be made to accomplish the function performed by the patent in question, if it were not designed by its maker, nor adapted nor actually used, for the performance of such functions." Topliff v. Topliff, 145 U. S. 161, 12 Sup. Ct. 825. Let a decree be prepared in accordance with this opinion.